(SPACE BELOW FOR FILING STAMP ONLY)

BENSON LEGAL, APC
Susan M. Benson, Esq., State Bar # 146837
6345 Balboa Blvd., Bldg 3, Suite 365
Encino, CA 91316
Phone:818-708-1250
Fax: 818-708-1444

Attorney for   PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| CRYSTAL GEYSER WATER COMPANY, and SOMPO JAPAN INSURANCE COMPANY OF AMERICA <br><br> Plaintiffs, <br><br> INTERNATIONAL CHEMICAL CORP. <br><br> Defendant. | CASE NO. <br><br> Complaint for Damages <br><br> JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiffs, by and through their attorneys, Benson Legal, APC file the within complaint against the above-named Defendant, and in support thereof aver as follows:

**PARTIES**

1. Crystal Geyser Water Company ("CGW") is a corporation organized and existing under the laws of the State of California with a principal place of business at 501 Washington Street, Calistoga, CA 94515.

2. CGW operates a facility in Bakersfield, Kern County, California, at which a substantial part of the events giving rise to this claim occurred.

3. Sompo Japan Insurance Company of America ("Sompo") is a corporation organized and existing under the laws of New York, with a principal place of business at 777 Third Avenue, 24th Floor, New York, New York 10017-1414. At all times relevant hereto, Sompo was registered to do business and authorized to provide insurance in California.

4. International Chemical Corp. ("ICC") is a corporation organized and existing under the laws of the State of Florida, with a principal place of business at 7654 Progress Circle, West Melbourne, FL 32904. At all times relevant hereto, ICC was engaged in the business of manufacturing and selling chemical solutions that serve the needs of beverage and bottled water industries.

## JURISDICTION

5. This Court has jurisdiction in this action pursuant to 28 U.S.C. §1332 as amended, as the matter in controversy involves a dispute between citizens of different states in that the Plaintiffs are corporate entities incorporated and/or headquartered in the State of California and New York, and the Defendant is a corporate entity organized and existing under the laws of the State of Florida and the amount in controversy, exclusive of interests and costs, exceeds $75,000.00.

6. Venue is proper in this District pursuant to 28 U.S.C. §1391 (b)(2), as a substantial part of the events or omissions giving rise to the claim occurred at CGW's facility in Bakersfield, California, located within this judicial district.

## GENERAL FACTS

7. CGW, as noted above, is in the bottled water industry and operates numerous facilities for bottling and processing it products, including one in Bakersfield, CA.

8. Prior to July 2014, CGW had purchased a product to use in its bottling operations from ICC called "Clean Trac," a lubricant allegedly designed for use on bottling conveyor systems in the beverage industry.

9. Such purchase was only made after the "Clean Trac" product was recommended to CGW by a sales representative from ICC, advising that such product was appropriate to use with CGW's bottles and bottling process.

10. ICC had recommended and approved it for use with CGW's bottles made of polyethylene terephthalate (or "PET").

11. CGW purchased the "Clean Trac" product and incorporated it in its bottling process.

12. During July 2014, it came to CGW's attention that numerous of its processed bottles were breaking, cracking, malfunctioning or otherwise failing after having been exposed to the Clean Trac product.

13. After the bottle failures were noticed, ICC's principal and owner Robert Catroneo, Jr. sent an urgent communication to CGW that "Clean Trac" was never approved for the PET bottles; instructing CGW to discontinue the use of "Clean Trac" on the PET bottles; and to change the "Clean Trac" lubricant to instead "PET GLIDE 1000" lubricant, concluding that "we have to take the Clean Trac off line. It is not approved and we do not want to take on any more liabilities."

14. As a result of such failures, CGW was required to destroy a large amount of its production; was forced to recall back to its facility a large amount of distributed products; incurred extra expenses in replacing or refunding the lost production; and suffered other business expenses and losses related to such bottle failures and damages.

15. At the time of the production failures and related issues, Sompo insured CGW for various insurance coverages. As a result of such insurance coverages, Sompo has been and/or may be compelled to reimburse CGW for a portion of the aforementioned losses. Other insurance carriers for CGW may

also be required to reimburse for some of such losses, expenses and damages incurred. As such, Sompo and any such other carriers that may be required to reimburse for any covered losses, would be subrogated to the claims that CGW may have against ICC (and or others) responsible for such losses.

## COUNT I- NEGLIGENCE

16. Plaintiffs incorporate herein by reference the allegations alleged in all previous paragraphs of the Complaint with the same effect herein fully set forth.

17. The aforementioned damages were the direct and proximate result of the negligence, carelessness, recklessness and/or other liability producing conduct of Defendant, including negligent acts and/or omissions of such Defendant, as performed by and through its agents, principals, employees, and/or servants, more specifically described as follows:

(a) failing to exercise reasonable care in the performance of its duties as manufacturer and seller of the "Clean Trac" product, including, but not limited to, carelessly and negligently performing the following:

   (1) failing to properly and competently manufacture and sell the product to CGW in a safe and appropriate manner;

   (2) failing to ensure that proper techniques and materials were employed, and applicable safety procedures followed, as to the manufacture and sale of the product to customers, including CGW;

   (3) recommending the use of the product for CGW's bottling operations when such product was improper and unsafe for such use; and/or

   (4) failing to provide proper and safe warnings and use instructions or limitations along with the product.

(b)  failing to adequately instruct its servants, principals, employees and agents as to the proper ways to perform the tasks set forth in subparagraph (a);

(c)  failing to adequately warn Plaintiffs and others of the defects resulting from the careless and negligent failure to exercise reasonable care as set forth in subparagraph (a), above;

(d)  failing to provide, establish and/or follow proper and adequate controls so as to ensure the proper performance of the tasks set forth in subparagraph (a) above;

(e)  failing to perform the tasks set forth in subparagraph (a) in conformity with prevailing industry and governmental specifications and standards;

(f)  violating the standards of care prescribed by statutes, rules, regulations, ordinances, codes, and/or industry customs applicable to their action; and/or

(g)  selecting and contracting with individuals and entities that were ill-trained and/or unprepared to properly perform the tasks set forth in subparagraph (a) above.

18. As a direct and proximate result of such conduct, Plaintiffs sustained and incurred the aforementioned damages and losses, and the imposition of additional and extra expenses, in an amount in excess of $75,000.00.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendant in an amount in excess of $75,000.00 plus interest, costs of suit, reasonable attorney fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

## COUNT II– BREACH OF WARRANTIES

19. Plaintiffs incorporate herein by reference the allegations alleged in all previous paragraphs of the Complaint with the same effect herein fully set forth.

20. Additionally, and/or alternately, Plaintiffs assert the following Count.

21. In conjunction with sale of the Clean Trac product, Defendant expressly and implicitly warranted the product would be free from defects, merchantable and safe to use for its general and its intended purposes.

22. Based upon the above facts, the Defendant breached these implied and/or statutory warranties, as well as express warranties.

24. As a direct and proximate result of such breaches, Plaintiffs sustained and incurred the aforementioned damages in excess of $75,000.00.

25. Plaintiffs had and have performed all conditions precedent to recovery based upon such breaches.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendant in an amount in excess of $75,000, plus interest, costs of suit, delay damages, and such other relief as the Court deems appropriate under the circumstances.

## COUNT III- STRICT LIABILITY

26. Plaintiffs incorporate herein by reference the allegations alleged in all previous paragraphs of the Complaint with the same effect herein fully set forth.

27. Additionally, and/or alternately, Plaintiffs assert the following Count.

28. Defendants is engaged, and at all times relevant hereto was engaged, in the business of marketing, distributing, delivering, and/or selling, *inter alia*, solutions for use in the bottling industry, and/or other components thereof.

29. The Defendant marketed, distributed, delivered, and/or sold the Clean Trac product(s) in a defective condition, unreasonably dangerous to foreseeable users, including Plaintiffs.

30. The Defendant knew, or should have known, that the subject product(s) would reach CGW without substantial change from the condition in which sold.

31. The Clean Trac product(s) did reach CGW without substantial change from the condition in which sold.

32. The aforementioned defects consisted of:

    a. design defects;
    b. manufacturing defects;
    c. a failure to warn of the design or manufacturing defects; and/or
    d. a failure to properly instruct as to the appropriate use and limitations for safe use of the Clean Trac product(s).

33. Such defects were the proximate and legal cause of the aforementioned damages and losses, and for these reasons, Defendant is strictly liable to Plaintiffs for their damages under Section 402A of the Restatement (2d) of Torts, the Restatement (3d) of Torts, and the applicable law of the State of California.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendant in an amount in excess of $75,000.00 plus interest, costs of suit, reasonable attorney fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

**COUNT IV- MISREPRESENTATION**

34. Plaintiffs incorporate herein by reference the allegations alleged in all previous paragraphs of the Complaint with the same effect herein fully set forth.

35. Additionally, and/or alternately, Plaintiffs assert the following Count.

36. In furtherance of the aforementioned sale of the Clean Trac product(s), Defendant, by and through its principals, servants, employees, and/or agents had misrepresented that such product(s) were safe and appropriate for use with CGW's PET bottling operations.

7

37. This was an intentional and/or negligent misrepresentation as to the characteristics and capabilities of Defendant's product

38. Defendant knew that CGW was and would be relying on such misrepresentation in both the purchase and use of the Clean Trac product(s).

39. CGW reasonably relied on such misrepresentation in both its purchase and use of the Clean Trac product(s).

40. In turn, such misrepresentations were the proximate and legal cause of the aforementioned damages and losses.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendant in an amount in excess of $75,000.00 plus interest, costs of suit, reasonable attorney fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

Respectfully submitted,

**Benson Legal, APC**

By: *Susan M. Benson*

**Susan Benson, Esquire**
6345 Balboa Boulevard, Suite 365
Encino, CA 91316
818-708-1250 (Office)
818-708-1444 (Fax)
benson@bensonlegal.net